No. 101,719

STATE OF KANSAS, *Appellee*, v. STEVEN R. HERNANDEZ,
*Appellant*.

(273 P.3d 774)

Opinion filed
April 12, 2012.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Julie A. Koon*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: In Sedgwick County District Court case No. 07CR3805, Steven R. Hernandez was charged with aggravated indecent liberties with a child. After the trial, the jury returned guilty verdicts on both aggravated indecent liberties with a child and the lesser included offense, attempted aggravated indecent liberties

with a child. The trial court imposed a life sentence, without possibility of parole for 25 years, for aggravated indecent liberties with a child.

In an unrelated case, case No. 07CR2807, Hernandez pleaded guilty to aggravated sexual battery. In that case, the trial court imposed a sentence of 32 months' incarceration, to run consecutive to his sentence in case No. 07CR3805. On Hernandez' motion, the trial court consolidated these two cases for appeal.

On the aggravated indecent liberties conviction, we consider the issues raised by the inconsistent jury verdicts and the failure to prove Hernandez' age. That conviction is reversed and remanded. On the aggravated sexual battery conviction, we affirm the trial court's use of criminal history for sentencing.

## FACTUAL AND PROCEDURAL HISTORY

On October 9, 2007, Steven Hernandez pleaded guilty to aggravated sexual battery in case No. 07CR2807. This charge was based on events occurring September 8, 2007, with L.M.C., a 17-year-old female. Hernandez was released on bond pending sentencing.

On December 15, 2007, while on bond and awaiting sentencing in 07CR2807, Hernandez called R.F. several times to see about getting together. Hernandez eventually went to R.F.'s home to visit him. R.F. had been friends with Hernandez' grandfather for about 15 years and had known Hernandez for several years. R.F. testified that Hernandez knew his oldest son and had met his oldest daughter previously but Hernandez did not know the two younger children who were at home that night. R.F. introduced Hernandez to his youngest daughter, V.F., age 11, and his youngest son, age 7.

R.F. and Hernandez sat at the table drinking beer and talking until R.F.'s wife, B.F., got home from work. B.F. put the younger children to bed and then watched a movie on television in the living room, where R.F. and Hernandez joined her. Eventually, both R.F. and B.F. went to bed and left Hernandez to sleep on the sofa.

V.F. testified that she went to sleep that night wearing her panties, bra, and a shirt. She woke up when Hernandez, identifying himself as one of her older brothers, asked to lie down with her. V.F. allowed him to lie on top of the covers, as she often let her

brother share her bed on top of the covers. Hernandez lay down touching V.F.'s buttocks with the back of his hand; V.F. described this contact as accidental. He then got close to V.F. and hugged her with one arm, pressing his chest against her back and placing his hand on her stomach. Suspecting that the person in her bed was not one of her brothers, V.F. made an excuse about getting her MP3 player and got out of bed. She turned on the lights and saw Hernandez lying naked on top of her bed. She ran to her parents' room and woke her mother.

B.F. testified that V.F. woke her saying, "Mom, he's in my bed and he's naked." B.F. went into V.F.'s room and saw Hernandez "stark naked" on top of the covers of her daughter's bed. She then woke R.F., who began arguing with Hernandez. B.F. hit Hernandez several times before calling the police.

Hernandez was charged with one count of aggravated indecent liberties with a child, an off-grid person felony, based on the December incident with V.F. Over Hernandez' objection at trial, the jury was instructed on both aggravated indecent liberties and the lesser included offense of attempted aggravated indecent liberties. On separate pages of the verdict form, the jury returned guilty verdicts on both charges. Hernandez moved for a mistrial, claiming that there was a fundamental error in the jury verdicts. In response, the State likened the situation to one where a defendant is charged with alternative counts and the jury convicts on both alternative counts. The court denied Hernandez' motion for mistrial and set the matter for further argument at sentencing.

At sentencing, the court denied Hernandez' motions for new trial, judgment of acquittal, and sentence departure, and imposed a life sentence on the aggravated indecent liberties with a child conviction in case No. 07CR3805. The court also imposed the presumptive sentence of 32 months for the aggravated sexual battery in case No. 07CR2807, to be served consecutive to the life sentence. The cases were consolidated for appeal on Hernandez' motion. Further facts will be presented as necessary for the analysis.

## Inconsistent Verdicts

Over Hernandez' objection, the trial court instructed the jury on

the lesser included offense of attempted aggravated indecent liberties with a child. The jury instructions did not include PIK Crim. 3d 68.09, which is the pattern instruction that explains how a jury should consider lesser included offenses. Contrary to PIK Crim. 3d 68.10, which provides a single comprehensive verdict form for each criminal offense charged, including any lesser included offenses, the court provided the jury with two separate verdict forms. Hernandez did not request PIK Crim. 3d 68.09 or object to the verdict forms. The verdict forms, each presented to the jury on separate sheets of paper, read:

"VERDICT

_____ We, the jury, find the defendant guilty of aggravated indecent liberties with a child.

_____ We, the jury, find the defendant not guilty of aggravated indecent liberties with a child.

. . . .

If the jury finds the defendant not guilty of aggravated indecent liberties with a child, please complete Verdict Form B."

"VERDICT (Form B)

_____ We, the jury, find the defendant guilty of attempted aggravated indecent liberties with a child.

_____ We, the jury, find the defendant not guilty of attempted aggravated indecent liberties with a child."

Contrary to the language on the bottom of the first verdict form, the jury returned a guilty verdict on both forms. After reviewing the completed verdict forms, the court held a brief off-the-record discussion with counsel outside the hearing of the jury and the court reporter. The court read the verdicts into the record and discharged the jury. After the jury left the courtroom, the court referred back to the off-the-record discussion and asked the parties to restate their arguments. The State argued that the verdicts were not a problem, as this was similar to a situation where the State charged a case under alternative theories; therefore, any problem with the verdicts could be addressed at sentencing. Defense counsel argued that Hernandez had not been charged under alternative theories in this case; therefore, the two inconsistent verdicts caused a fatal problem, resulting in Hernandez' request for a mistrial.

The court denied the motion for a mistrial and set the matter for further hearing at sentencing. The trial court proceeded to treat these verdicts as guilty verdicts on alternative charges, even though Hernandez was only charged with the completed crime. The attempted aggravated indecent liberties with a child instruction was given, over the defendant's objection, as a lesser included charge. Because Hernandez was not charged with aggravated indecent liberties or, in the alternative, attempted aggravated indecent liberties, the trial court could not correct this problem at sentencing.

It is a legal impossibility to both attempt the commission of a crime and complete the commission of the same crime, because the failure to complete commission of the crime is an element of attempt. See PIK Crim. 3d 55.01(3). As Professor Paul H. Robinson put it: "It is almost universally the rule that a defendant may not be convicted of both a substantive offense and an inchoate offense designed to culminate in that same offence." 1 Robinson, *Criminal Law Defenses* § 84(b), p. 414 (2011). Kansas law specifically prohibits conviction of both the crime charged and an attempt to commit the crime charged. K.S.A. 21-3107(2)(c).

Arguing that the verdicts are inherently inconsistent and therefore a fatal problem in the case, Hernandez relies primarily on the following language from *State v. Culbertson*, 214 Kan. 884, Syl. ¶ 2, 552 P.2d 391 (1974): "When a jury, contrary to the court's instructions, finds a defendant guilty of both the greater and lesser offenses, it is the duty of the trial court to order the jury to reconsider and correct its verdict."

In *Culbertson*, the jury returned guilty verdicts on both possession with intent to sell and the lesser included crime of possession. The judge explained that the defendant could not be found guilty of both the greater and lesser offenses and sent the jury back to reconsider. The jury soon returned with guilty verdicts on the charges of possession with intent to sell. We rejected arguments that (1) sending the jury back to reconsider its verdicts violated the defendant's double jeopardy rights and (2) the trial court erred in not accepting the jury's verdicts finding him guilty of the lesser offenses, which would have acquitted him of the greater offenses. We concluded that accepting either of the verdicts would have

been error because the verdicts were defective by virtue of finding the defendant guilty of both the greater and lesser offenses. *Culbertson*, 214 Kan. at 886-87.

Despite the language in *Culbertson*, we have not considered the consequence of the type of situation presented here, where the trial court failed to order the jury to reconsider and correct the verdict. In *State v. Winters*, 276 Kan. 34, 72 P.3d 564 (2003), the jury returned guilty verdicts on both the severity level 4 and severity level 7 aggravated battery charges, which had been charged in the alternative. The trial court had found that the charges were multiplicitous, the verdicts on the two counts therefore merged into the more serious charge, and the defendant should be convicted of the level 4 aggravated battery only. The Court of Appeals reversed and remanded, ruling that the level 4 aggravated battery conviction should be vacated and sentence imposed on the level 7 aggravated battery conviction. This court reversed the Court of Appeals and affirmed the trial court. We first determined that level 7 aggravated battery is a lesser included offense of level 4 aggravated battery because all elements of the level 7 aggravated battery are identical to some of the elements of the severity level 4 aggravated battery. Because one charge is a lesser included offense of the other, it was error to instruct on these charges as if they were alternative crimes. *Winters,* 276 Kan. at 36-39. When a defendant is convicted of multiplicitous offenses, the court must vacate the lesser sentence and impose sentence only on the greater offense. *Winters,* 276 Kan. at 43.

Faced with the inconsistent verdicts in this case, the trial court should have sent the jury back into deliberation with new verdict forms. Under *Culbertson*, the trial court had a duty to order the jury to reconsider and correct its verdicts. Aggravated indecent liberties with a child, under K.S.A. 21-3504(a)(3)(A), requires proof of "lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." Attempted aggravated indecent liberties with a child, under K.S.A. 21-3301(a), requires proof of an "overt act toward the perpetration of [aggravated indecent liberties with a child] done by a

person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." Unlike the charges in *Winters*, the charges in this case—aggravated indecent liberties with a child and attempted aggravated indecent liberties with a child—cannot merge, because each crime requires proof of an element not necessary to prove the other offense. In fact, a finding of guilty on one of these charges requires a finding of not guilty on the other because the elements are logically inconsistent. Unfortunately, the record does not include the discussion at the bench before the verdicts were read, so we can only speculate as to what options the trial court considered by virtue of counsel's recounting of the discussion after the jury was excused. Ultimately, Hernandez requested a mistrial.

We have recently articulated the standard for reviewing a motion for mistrial:

"On appeal, the trial court's decision denying a motion for mistrial is reviewed under an abuse of discretion standard."

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, Syl. ¶¶ 2, 3, 256 P.3d 801 (2011).

K.S.A. 22-3423(1) allows the trial court to declare a mistrial "at any time" because:

"(a) It is physically impossible to proceed with the trial in conformity with law; or

"(b) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law and the defendant requests or consents to the declaration of a mistrial."

When defense counsel was asked to restate his arguments from the off-the-record discussion between the court and counsel prior to the reading of the verdicts, he requested a mistrial on the record. By that time, it was impossible to proceed with the trial in conformity with the law. *Culbertson* required that the trial court order the jury to reconsider and correct its verdict; however, the jury had

already been discharged in spite of Hernandez' counsel pointing out the legal impossibility presented by the inconsistent verdicts and the flawed position of the State that the problem could be cured at sentencing.

A mistrial was appropriate under K.S.A. 22-3423(1)(b) because these verdicts are legally and factually inconsistent. The trial court could not legally enter judgment on either verdict because the jury's finding on the other verdict precludes such judgment. Aggravated indecent liberties with a child requires a completed crime. Attempted aggravated indecent liberties with a child requires that the crime was not completed. Logic prevents these crimes from merging, and K.S.A. 21-3107(2)(c) prohibits conviction of both the crime charged and an attempt to commit the crime charged.

In this case, the trial court abused its discretion in denying Hernandez' motion for a mistrial. The trial court's action was based on an error of law, that is, the trial court erroneously concluded that it could deal with the problem at sentencing as if the charges had been brought in the alternative, or as if the charges merged so that the defendant was only convicted of the greater offense. As a result, defendant's conviction must be reversed and the case remanded for a new trial.

## PROOF OF AGE

Issues that implicate jurisdiction, statutory interpretation, and constitutional interpretation are subject to unlimited review by this court. *State v. Bello*, 289 Kan. 191, 195, 211 P.3d 139 (2009). We have previously determined that a defendant's age of 18 or older is an element of the off-grid Jessica's Law aggravated indecent liberties charged in this case. See, *e.g.*, *State v. Sellers*, 292 Kan. 117, 132, 253 P.3d 20 (2011); *State v. Gonzales*, 289 Kan. 351, 370, 212 P.3d 215 (2009). Accordingly, if the defendant's age was not submitted to the jury and proved beyond a reasonable doubt, under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the sentencing court is precluded from imposing the enhanced off-grid severity level sentence. *Bello*, 289 Kan. at 199-200.

When the trial record shows evidence of age that was over-whelming and essentially uncontroverted, the failure to give the jury an instruction on the element of age in Jessica's Law cases may be harmless. See, *e.g.*, *State v. Huerta-Alvarez*, 291 Kan. 247, Syl. ¶ 7, 243 P.3d 326 (2010); *State v. Reyna*, 290 Kan. 666, 682, 234 P.3d 761, *cert. denied* 131 S. Ct. 532 (2010). If the trial record does not include such evidence, we have held that the defendant can be exposed to punishment only for the on-grid form of the crime. See, *e.g.*, *Sellers*, 292 Kan. at 133; *Bello*, 289 Kan. at 179-200; *Gonzales*, 289 Kan. at 371.

In this case, the amended information did not allege that Hernandez was 18 or older at the time of the crimes, but it did list his year of birth as 1988, with the crime committed on December 16, 2007. At trial, an officer testified that "a mother was calling stating there was an approximately 20-year-old Hispanic male in bed with their 12-year-old daughter." The victim testified that she was 11 years old at the time of trial. The victim's mother, B.F., testified that she had never met Hernandez before the night of the offense. She also testified that she had no idea what she said on the 911 call because she was upset and simply wanted an officer to arrive quickly. This testimony is weak because B.F. had no reason to know Hernandez' age and misstated the age of her own daughter.

The victim's father, R.F., testified that Hernandez was friends with his son. The State argues this testimony suggests Hernandez was the same age as R.F.'s son. But according to R.F., Hernandez called several times wanting R.F., not his son, to come over and hang out. Hernandez eventually came to the house to visit with R.F., although neither the 19-year-old son nor the 14-year-old son was home that evening. Whether Hernandez was friends with R.F. or either of his sons, this evidence does not establish Hernandez' age at the time of these crimes.

The trial record in this case does not show overwhelming and essentially uncontroverted evidence that Hernandez was 18 years old or older at the time of his crimes. Ordinarily, we would remand for resentencing for the on-grid form of the crime. See, *e.g.*, *Sellers*, 292 Kan. at 133; *Bello*, 289 Kan. at 199-200; *Gonzales*, 289 Kan. at 371. But we are reversing Hernandez' convictions on other

grounds and therefore we do not ordinarily address other claims of error. In this situation, we would address other claims of error for only two reasons: (1) to provide guidance to the trial court on issues likely to arise on remand; or (2) to determine a sufficiency of the evidence claim for double jeopardy purposes. See *Ball v. United States*, 163 U.S. 662, 671-72, 16 S. Ct. 1192, 41 L. Ed. 300 (1896) (double jeopardy does not apply to bar retrial where defendant appeals and obtains reversal based on error in the proceeding); see also *Burks v. United States*, 437 U.S. 1, 16-18, 98 S. Ct. 2141, 57 L. Ed. 1 (1978) (recognizing exception to *Ball* where conviction is reversed for evidentiary insufficiency; a reversal based on a determination the evidence was insufficient to support the verdict is akin to a determination the trial court should have entered a judgment of acquittal warranting the double jeopardy protection); *State v. Dumars*, 37 Kan. App. 2d 600, 608, 154 P.3d 1120 (2007) (citing *Lockhart v. Nelson*, 488 U.S. 33, 39, 109 S. Ct. 285, 102 L. Ed. 2d 265 [1988], and *Burks*, 437 U.S. at 18).

The question, then, is whether a violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), is a determination that the evidence was insufficient to support the conviction within the meaning of the United States Supreme Court's double jeopardy jurisprudence. As noted below, double jeopardy does not apply to noncapital sentencing determinations. It is an open question whether the requirement of *Apprendi*—that sentencing facts are the "functional equivalent" of elements of an offense for purposes of the Sixth Amendment right to jury trial, 530 U.S. at 494, n.19—affects that double jeopardy principle. The Supreme Court has not resolved the question, we have never addressed it, and the parties have not raised and briefed it. Therefore, we find it is not appropriate to determine it *sua sponte* here and now.

Under current Supreme Court precedent, double jeopardy principles do not apply in the sentencing context. *Monge v. California*, 524 U.S. 721, 724, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998). A "narrow exception" exists, however, for capital sentencing proceedings. *Monge*, 524 U.S. at 730; *Bullington v. Missouri*, 451 U.S. 430, 439, 445, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981) (double

jeopardy applies to capital sentencing proceedings that "have the hallmarks of the trial on guilt or innocence[;]" a jury's determination the prosecution did not prove beyond a reasonable doubt facts necessary to impose a sentence of death is an "acquittal" under double jeopardy and thus double jeopardy bars the State from seeking the death penalty on retrial).

*Monge* was decided before *Apprendi* and was based on double jeopardy's "distinction between facts that are *elements* of a criminal offense and facts that go only to the *sentence*[.]" *Monge*, 524 U.S. at 738 (Scalia, J., dissenting). At the time *Monge* was decided, that "same distinction also delimit[ed] the boundaries of other important constitutional rights, like the Sixth Amendment right to trial by jury and the right to proof beyond a reasonable doubt." 524 U.S. at 738 (Scalia, J., dissenting). Presaging the *Apprendi* decision, Justice Scalia argued for elimination of the distinction.

*Apprendi* eliminated the distinction between certain sentencing facts and elements of an offense for purposes of the Sixth Amendment right to jury trial. *Apprendi*, 530 U.S. at 494. Nevertheless, an *Apprendi* violation is a sentencing error. *Blakely*, 542 U.S. at 304 (Sixth Amendment right to jury trial is violated "[w]hen [the] judge inflicts punishment that the jury's verdict alone does not allow"). This frames the fundamental question for noncapital sentencing determinations: does *Apprendi*'s elimination of the distinction between sentencing facts and elements for purposes of the right to jury trial extend to other constitutional rights like double jeopardy?

There is no clear answer. The Supreme Court has hinted that *Monge*, which relied on the distinction between sentencing facts and elements of the offense in holding that double jeopardy does not apply to noncapital sentencing determinations, may be subject to question in light of *Apprendi*. See *Sattazahn v. Pennsylvania*, 537 U.S. 101, 111-12, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003) (citing *Monge*, 524 U.S. at 738 [Scalia, J., dissenting]) (" 'The fundamental distinction between facts that are *elements* of a criminal offense and facts that go only to the *sentence*' not only 'delimits the boundaries of . . . important constitutional rights, like the Sixth Amendment right to trial by jury,' but also 'provides the foundation

for our entire double jeopardy jurisprudence.' "). At this point, though, *Monge* remains good law; double jeopardy does not apply to noncapital sentencing determinations.

Whether *Apprendi* would or should change that rule is the kind of question that should be resolved only after thorough consideration based on a full presentation of the question through briefing and argument. This is but one question that may be litigated upon remand. We have no doubt that skilled advocates would be able to identify others and present persuasive arguments elaborating on or countering the issues relating to potential retrial. By engaging in speculative conclusions without benefit of a district court ruling and the resulting briefs and arguments on appeal, the dissent has engaged in a "pick-off play" without realizing there are no runners on base. " 'The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.' " *National Aeronautics and Space Admin. v. Nelson*, 562 U.S. 134, 131 S. Ct. 746, 757, n.10, 178 L. Ed. 2d 667 (2011) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 [C.A.D.C. 1983] [opinion for the Court by Scalia, J.]); see also *State v. Puckett*, 230 Kan. 596, 600-01, 640 P.2d 1198 (1982) (When exceptional circumstances justify an appellate court's *sua sponte* consideration of an issue not raised on appeal, the parties must be given "a fair opportunity to brief the new issue and to present their positions to the appellate court before the issue is finally determined."). Only after this issue has been briefed, argued, and decided at the trial court and consequently briefed and argued on appeal would this issue be ripe for decision by this court.

## CONCLUSION

As a result of our ruling on the two issues discussed above, we do not reach the following issues: (1) whether the jury instructions were clearly erroneous because the lesser included offense instruction, PIK Crim. 3d 68.09, was not given or because the verdict form did not conform to PIK Crim. 3d 68.10; (2) whether Hernandez should be eligible for parole after 20 years, under K.S.A. 22-3717(b)(2), rather than after 25 years, under K.S.A. 21-

4643(a)(2)(c); (3) whether the district court erred in denying Hernandez' motion for downward departures; (4) whether Hernandez is entitled to a new trial because the trial court accepted the jury's verdicts without inquiring into the accuracy of the verdicts, as required by K.S.A. 22-3421; and (5) whether cumulative error requires a new trial.

The only remaining issue Hernandez raised in the aggravated indecent liberties case is whether the district court erred in denying his motion to suppress his interrogation statements. When the trial court has denied a motion to suppress, the moving party must object to the introduction of that evidence at the time it was offered at trial to preserve the issue for appeal. *State v. McCaslin*, 291 Kan. 697, 726, 245 P.3d 1030 (2011). We will not address this issue because no objection was made at trial during the officer's testimony.

As his only issue in case No. 07CR2807, in which Hernandez pleaded guilty to aggravated sexual battery, Hernandez argues that because his prior convictions were not included in the complaint or proved to a jury beyond a reasonable doubt, the use of his criminal history score in sentencing violates *Apprendi*. Hernandez acknowledges that this court has previously decided this issue, but seeks to preserve it for federal review. See *State v. Ivory*, 273 Kan. 44, 47-48, 41 P.3d 781 (2002).

Hernandez' convictions and sentences in the aggravated indecent liberties case are reversed and remanded for new trial in accordance with this opinion.

\* \* \*

JOHNSON, J., concurring in part and dissenting in part: I agree with most of the majority's opinion. Germane to this separate opinion, I concur with the majority's syllabus statements that "[p]roving a defendant's age of 18 or older is an element of the off-grid Jessica's Law aggravated indecent liberties offense," and that if the trial record does not include sufficient evidence of defendant's age, "the defendant may be exposed to punishment only for the on-grid form of the crime." Likewise, I agree with the majority's opinion statements that "[t]he trial record in this case does not show over-

whelming and essentially uncontroverted evidence that Hernandez was over the age of 18 years old or older at the time of his crimes," and that the failure of proof on the age element would ordinarily lead us to "remand for resentencing for the on-grid form of the crime."

Further, I appreciate that an argument can be made that the question of whether, upon retrial, the State can prosecute Hernandez for the off-grid version of aggravated indecent liberties with a child may not be ripe for us to decide today, given that the State has not yet attempted such a retrial. If the majority had simply made that holding and stopped, I probably would not have written separately, even though I believe that judicial economy is better served when we provide explicit directions to the district court as to what it is permitted to do upon remand. But the majority went much further, providing argument as to why this court might find it permissible for Hernandez to be tried for the off-grid version of the crime after his conviction for the on-grid version has been reversed and remanded for retrial. I am convinced that, at this point in the case, there is absolutely no possibility of retrying Hernandez for the off-grid crime and, in my view, we should not be giving the bench and bar any such misdirection.

I believe the majority gets started on the wrong track by viewing the question as some esoteric, albeit artificial, *Apprendi* issue of whether the elements necessary to convict Hernandez of off-grid aggravated indecent liberties with a child are different depending upon which constitutional right one is discussing. The apparent suggestion is that the defendant's age of 18 years or older is only an element of the off-grid crime when analyzing the Sixth Amendment's right to jury trial but not when analyzing the Fifth Amendment's prohibition against multiple trials, *i.e.*, defendant's age is an element for sentencing enhancement purposes but not for double jeopardy purposes. The majority's suggestion cannot withstand scrutiny under our Kansas statutes; it runs counter to our prior cases remanding for on-grid resentencing, and it makes scant sense. Moreover, the majority's reliance on *Monge v. California*, 524 U.S. 721, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998), is so far off-base as to cry out for an immediate pick-off play.

I begin by relating some of the disconnects with common sense that I discern in the majority's reasoning. First, a rational person's notion of fundamental fairness should raise a due process red flag when the majority proposes that the elements necessary to convict a person of a particular crime can be fluid, *i.e.*, different elements can apply depending upon which constitutional provision an appellate court is considering. The citizens of this State are entitled to know what the State has to prove to obtain a conviction for a particular crime, regardless of what issues might later arise on appeal. Likewise, Kansas citizens are entitled to know that the current prosecution will preclude any subsequent prosecution on the same facts. If some fact is an element of the crime being prosecuted, the State must prove it beyond a reasonable doubt to obtain a conviction—period—end of story. There is no parallel universe in which the labeling of an issue as an *"Apprendi* violation" transforms an element of a particular crime into something that occupies a lesser status, whether or not one uses such terms as "functional equivalent," "sentencing fact," or "enhancement factor." An element is an element is an element.

Next, before considering the disposition of this appeal, the majority performed the function of a jury: it looked at all of the evidence presented in the trial relative to Hernandez' age; it assessed the credibility of the victim's mother's testimony and declared it to be "weak"; it weighed the testimony of the victim's father against other testimony and determined it did not establish Hernandez' age; and it made the ultimate factual finding that there was not overwhelming and essentially uncontroverted evidence that Hernandez was age 18 or older. Yet, after having effectively found Hernandez not guilty of the off-grid crime because its factual findings revealed that the State had failed to prove beyond a reasonable doubt all of the elements necessary for such a conviction, the majority then says it is unsure whether it determined the sufficiency of the evidence. I submit that if this court is going to do the fact-finding that the jury was precluded from doing, it should take ownership of what it has done and admit that the reversal of the off-grid conviction was based on its finding of insufficient evidence

and amounts to an acquittal on that charge. I would find any other characterization to be disingenuous.

The majority acknowledges that our remedy when the State fails to properly charge or effectively prove the off-grid version of the offense has historically been to vacate the off-grid sentence and remand for resentencing for the on-grid version of the offense. The statutory effect of that remedy will be discussed later. For now, I think it important to note that we have not ordered a retrial. The State has been allowed to keep the lesser offense conviction which its evidence supported. Yet, the majority is now saying that if the State commits even more errors, so that the validity of the lesser offense conviction is also called into question, then the State might well be able to retry the defendant on the off-grid version. It seems to me that, under such a scenario, a determined prosecutor, who regrets his or her failure to present evidence of the defendant's age at trial but nevertheless covets an off-grid sentence, could take the self-serving position on appeal that he or she committed other errors so egregious as to require reversal of the lesser included conviction, so that the State might get a do-over on the off-grid prosecution. I find it nonsensical that the more errors the State causes the better off it will be on remand.

Turning to our statutes, K.S.A. 21-3504(a)(3)(A) defines the crime with which Hernandez was charged, *i.e.*, aggravated indecent liberties with a child. If the victim is under the age of 14, the crime is a severity level 3, person felony, and it is an off-grid person felony "[w]hen the offender is 18 years of age or older." K.S.A. 21-3504(c). Although the majority refers to defendant's age as being a "sentencing fact," the statute defining the crime clearly makes that fact an element of the off-grid version of the offense. If the State proves all of the elements of the offense except for the defendant's age, it has obtained a conviction for an on-grid person felony, according to the statute that defines the elements of the offense.

Although the majority opinion here may be equivocal or contradictory about the character of the fact of defendant's age, the majority's author previously acknowledged that our caselaw has clearly established "that the defendant's age at the time of the offense is

*an element of the crime* if the State seeks to convict the defendant of the more serious, off-grid enhanced offense." (Emphasis added.) *State v. Reyna,* 290 Kan. 666, 676, 234 P.3d 761, *cert. denied* 131 S. Ct. 532 (2010). Moreover, *Reyna* specifically rejected "[t]he State's argument that the age issue is merely a sentencing factor." 290 Kan. at 676. It is curious that the majority would now suggest that a defendant's age might not really be an element of off-grid aggravated indecent liberties with a child, but rather it might be merely a "sentencing fact," whatever that is.

If we continue to apply our established characterization of a defendant's age as being an element, then when the jury did not make a finding that Hernandez was over the age of 18 at the time of the offense and the State did not present sufficient evidence at trial to permit this court to declare that the failure to prove the missing element was harmless error, we simply cannot affirm a conviction for the off-grid version of the crime. That result obtains regardless of whether *Apprendi* is added to the calculus.

And where the evidence is insufficient to support a conviction for a particular crime, the appropriate remedy is to reverse that conviction without retrial. See *State v. Scott,* 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007) ("If an appellate court holds that evidence to support a conviction is insufficient as a matter of law, the conviction must be reversed; and no retrial on the same crime is possible."). But as the majority notes, we have "ordinarily" remanded the case for on-grid resentencing for the lesser offense. Perhaps we should have strictly held the State to its argument that it was, in fact, seeking a conviction for the off-grid version of the crime and not for the lesser included offense. Then, we would have simply reversed the ineffectual off-grid conviction—no retrial; no resentencing. But we did not do that.

In retrospect, it would appear that the only justification for our "ordinarily" remanding for on-grid resentencing after finding a failure of proof on the defendant's age in Jessica's Law cases is that we implicitly found that the State had proved or the defendant had not challenged the remaining elements of the offense and that those remaining elements constituted a conviction on the lesser included, on-grid offense. Such a remand for resentencing on a

lesser included offense upon failure of proof of an element of the greater offense is not unprecedented. See, *e.g.*, *State v. Jones*, 247 Kan. 537, 547-48, 802 P.2d 533 (1990) (failure of proof damaged property worth more than amount needed to convict of charge of felony criminal damage to property resulted in remand for resentencing for misdemeanor version of offense). In this case, that would mean an implicit finding that the State had effectively convicted Hernandez of the severity level 3 person felony version of aggravated indecent liberties with a child, notwithstanding its failure to prove all of the elements of the off-grid offense. See K.S.A. 21-3504(c) (without defendant's age, offense is on-grid).

In other words, our "ordinary" remedy of remand for on-grid resentencing is predicated upon the notion that the jury effectively convicted the defendant of the lesser included offense. Of course, it is a rather fundamental principle, codified in this State in K.S.A. 21-3108(1)(c), that "[a] conviction of an included offense is an acquittal of the offense charged." Then, if the lesser included offense is overturned, the double jeopardy constraints on retrial are likewise codified in this State. K.S.A. 21-3108(5) provides that "[i]n no case where a conviction for a lesser included crime has been invalidated, set aside, reversed or vacated shall the defendant be subsequently prosecuted for a higher degree of the crime for which such defendant was originally convicted."

The application of K.S.A. 21-3108(5) in this case is really simple and straightforward. The State did not effectively obtain a conviction for off-grid aggravated indecent liberties with a child. Instead, the evidence was only sufficient to support a conviction for the on-grid, severity level 3 version of the offense, *i.e.*, the jury originally convicted Hernandez of the lesser included offense. Upon our reversal of the lesser included offense conviction on other grounds, K.S.A. 21-3108(5) prohibits any subsequent prosecution for the off-grid (higher degree) version of the crime.

Apparently, the majority is unsure whether the failure of proof of the element which distinguishes the off-grid version of the crime from the on-grid version (defendant's age) can be construed as a conviction for the lesser included offense. If that construction is not correct, then this court's "ordinary" remedy has been egre-

giously erroneous. We cannot send a case back to the district court with instructions to resentence the defendant for a certain severity level of a crime, unless the defendant has been convicted of that crime by the jury. The remedy would be outright reversal of the off-grid crime for insufficiency of the evidence.

On the other hand, if the majority cannot say that Hernandez was convicted of the lesser included offense because of its belief that defendant's age is really not an element for double jeopardy purposes, then our "ordinary" remedy is still erroneous. The correct remedy in that event would be to remand for a new trial on the off-grid charge, rather than for on-grid resentencing. But I think we fashioned the correct remedy.

Although the foregoing is sufficient for my purposes, I take the liberty to comment briefly on *Monge*, which the majority apparently finds compelling. To me, that case is distinguishable and inapplicable here.

For one thing, *Monge* addresses California law, not Kansas law. Specifically, the case involves that State's "three strikes" law that enhances a convicted felon's sentence if he or she has two qualifying prior convictions for "serious felonies." 524 U.S. at 724.

The *Monge* dispute involved whether a prior assault conviction qualified as a serious felony; there were no issues with the elements of the marijuana charges for which Monge was convicted. The district court found that the prior conviction did qualify, but on appeal the evidence was found to be insufficient to support the trial court's characterization of the prior conviction as a serious felony. The question before the United States Supreme Court was whether double jeopardy prohibited the State from having a second opportunity to provide sufficient evidence to establish the prior assault charge as a qualifying conviction under the three-strikes law.

To put *Monge* in perspective with respect to Kansas law, the issue involved establishing the defendant's correct criminal history, akin to our determining whether a prior felony conviction should be construed as a person felony or nonperson felony. In that respect, *Monge* is not even within the purview of an *Apprendi* analysis. *Apprendi* specifically excluded the fact of a prior conviction from its holding. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120

S. Ct. 2348, 147 L. Ed. 2d 435 (2000); see also *Reyna*, 290 Kan. 666, Syl. ¶ 8 (any fact, other than the fact of a prior conviction, must be presented to jury). The fight in *Monge* was about the fact of the prior assault conviction, so *Apprendi* would not have applied even if it had been decided at the time of *Monge*. Nevertheless, one certainly cannot interpret *Monge* as permitting a retrial of a fact that was an essential element of the crime being prosecuted but was not proved at the first trial.

In sum, if I were to provide any information to the district court on what it is permitted to do on remand, I would make it clear to the court that a retrial cannot include the off-grid form of the crime. To do otherwise invites a potential waste of time and resources during a period when our judicial system cannot withstand any additional burdens.

BEIER and MORITZ, J.J., join the foregoing concurring and dissenting opinion.